UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division

Case No: 04-20004-CIV-COOKE/MCALILEY

THAIS CORDOSO ALMEIDA,

          Plaintiff,

v.

AMAZON.COM, INC.,
a Delaware Corporation,

          Defendant.
_____/

**CLOSED CIVIL CASE**

FILED by _____ D.C.
MGC
JUL 3 0 2004
CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

# FINAL ORDER OF DISMISSAL GRANTING DEFENDANT AMAZON.COM INC.'S MOTION FOR SUMMARY JUDGMENT AND DENYING ALL PENDING MOTIONS AS MOOT

**THIS CAUSE** came before the Court on the Defendant Amazon.com, Inc.'s (hereinafter "Amazon" or "Defendant") Motion for Summary Judgment ("Motion")**[D.E. 30]**, filed on June 7, 2004. The Court having examine the record and being otherwise advised of the premises, it is therefore,

**ORDERED** and **ADJUDGED** that Defendant's Motion for Summary Judgment is **GRANTED**. This case is **CLOSED**. All pending motions are **DENIED AS MOOT**.

I. *Factual Background*

In 1991, Plaintiff Thais Cardoso Almeida (hereinafter, "Plaintiff" or "Almeida") was a girl of ten (10) years old living in São Paulo, Brazil. Sometime in 1991, Plaintiff's mother was approached by Fabio Cabral, a highly respected local fashion photographer, who requested permission from Plaintiff's mother for Plaintiff to pose for him in a series of artistic photos in an



permission from Plaintiff's mother for Plaintiff to pose for him in a series of artistic photos in an upcoming exhibition entitled ,"18 Meninas com Menos de 18 Anos" ("18 Under 18 Years") to be held at a photo-gallery in São Paulo, Brazil.

Prior to the exhibition, Plaintiff's mother signed an authorization that read as follows:

> The legal representative for the photographed minor both listed below authorizes free from restrictions the use of photographic image produced by the photographer, Fábio G.M. Cabral, in an exhibition entitled "18 Girls Under 18 Years" and in the photographic book "PORTPHOLICS BOOK" No. 3 of the same title as the exhibition for use during the vernissage and launch at the "COLLECTORS" photographic gallery. The authorization extends to the invitation, the poster and printed material for the exhibition and launch of the book.

At the exhibition, Mr. Cabral selected twenty-five, instead of eighteen pictures for exhibition and the photographic book's title was changed to "Anjos Proibidos" or "Forbidden Angels." At the time the first edition of the photographic book was printed, the cover model was a young girl named "Priscilla." Plaintiff's picture could be found inside of the photographic book.

Some five hundred (500) copies of the photographic book were made available for sale at the exhibition. Only two hundred (200) were sold because the remaining copies were seized by the São Paulo authorities. Mr. Cabral and the publisher of the photographic book, Itamarati Gráfica, were prosecuted by the Brazilian authorities, for having produced a work of child pornography.

The ensuing criminal proceedings apparently caused a fire storm of public controversy in Brazil. In 1993, a Brazilian court found that the photographic book work did not constitute a criminal offense under Brazilian law, and acquitted Mr. Cabral and his publisher.

book entitled, *Anjos Proibidos*. Plaintiff's parents again consented to Mr. Cabral taking a photograph of Plaintiff for this article. The magazine also reprinted the original photo of Plaintiff taken by Mr. Cabral in 1991, as part of the exposé.

Plaintiff alleges that she suffered extreme emotional distress and was ostracized by her community. Plaintiff alleges further that the fire storm surrounding the photographic book and ensuing trial, precipitated her parents' divorce. Plaintiff, along with her mother, eventually moved to Florida. Plaintiff avers that the emotional distress she suffered as a child, has dissipated.

In 2000, a second addition of the photographic book, *Anjos Proibidos*, was published by Ophelia Editions. This edition of the photographic book lists Mr. Cabral and Ophelia Editions as the copyright owners. This edition also lists Mr. Lawrence A. Stanley as the copyright owner of the introduction. The 2000 edition is the same in all respects as the original photographic book except that there is a new publisher, a new introduction to the photographic book, and Plaintiff's picture now graces the cover.

In 2002, Plaintiff avers that she became aware of the Ophelia Editions edition of *Anjos Proibidos,* after her mother purchased the book from Defendant, Amazon.com. Plaintiff avers that she did not give her consent to have her image used on the cover of the Ophelia Editions edition of the photographic book.

On March 6, 2003, Plaintiff, through counsel, sent a letter to Amazon alleging that the Defendant had used her image on its website, without consent. In her letter, Plaintiff never demanded that Amazon cease and desist from selling the Ophelia Editions edition of *Anjos Proibidos*. Plaintiff's only request was that she received statutorily mandated damages, pursuant

to FLA. STAT. ANN. §540.08(2002).

On March 11, 2003, Defendant Amazon responded that it was not the seller of the Ophelia Editions edition of the photographic book and that it was not involved with any transaction between the sellers and buyers of this title, nor the agent of either, for any purpose. In addition, without a request from Plaintiff, Amazon voluntarily removed the title from its listings.

On July 7, 2003, Plaintiff, through counsel, sent a civil theft demand letter to Amazon, pursuant to FLA. STAT. ANN. §772.011. The record does not demonstrate a response from Amazon. Plaintiff commenced the instant action in the Eleventh Judicial Circuit in and for Miami-Dade County, Florida, on November 14, 2003. Defendant Amazon removed the case to this Court on January 2, 2004. Plaintiff alleges three (3) causes of action: (1) unauthorized publication of name or likeness; (2) civil theft, and; (3) common law invasion of privacy.

II.  ***Legal Standard***

Summary judgment is appropriate if the pleadings, depositions, and affidavits show that there is no genuine issue of material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). An issue is "material" if it is a legal element of the claim under applicable substantive law which might affect the outcome of the case. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986); *Allen v. Tyson Foods*, 121 F.3d 642, 646 (11th Cir. 1997). An issue is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the non-moving party. *Allen*, 121 F.3d at 646. On a motion for summary judgment, the Court must view all the evidence and all factual inferences drawn therefrom in the light most favorable to the non-moving party, and determine whether that evidence

could reasonably sustain a jury verdict. *Celotex*, 477 U.S. at 322-23; *Allen*, at 646.

While the burden on the movant is great, the opposing party has a duty to present affirmative evidence in order to defeat a properly supported motion for summary judgment. *Anderson*, 477 U.S. at 252. To meet this burden, the non-moving party "may not rest upon the mere allegations or denials of the adverse party's pleadings." Fed. R. Civ. P. 56(e). A mere "scintilla" of evidence in favor of the non-moving party, or evidence that is merely colorable or not significantly probative, is not enough. *Id.*; *see also Mayfield v. Patterson Pump Co.*, 101 F.3d 1371, 1376 (11th Cir. 1996)(conclusory allegations and conjecture cannot be the basis for denying summary judgment).

### III. *Discussion*

#### A. **Right to Publicity**

The crux of Plaintiff's allegations is that Amazon displayed the Ophelia Editions edition of the photographic book without her consent and without just compensation, in violation of FLA. STAT. ANN. §540.08, which reads in pertinent part:

> (1) No person shall publish, print, display, or otherwise publicly use for purposes of trade or any commercial or advertising purpose the name, portrait, photograph, or other likeness of any natural person without the express written or oral consent to such use given by:
>    (a) Such person; or
>    (b) Any other person, firm, or corporation authorized in writing by such person to license the commercial use of her name or likeness; or . . . .

FLA. STAT. ANN. § 540.08.

Plaintiff cannot recover under §540.08 for Amazon's sale of the Ophelia Editions edition of *Anjos Proibidos* because the subject matter has been preempted by the Communications Act of 1934, § 230 (c), as amended, 47 U.S.C. § 230 (c)(hereinafter, "CDA").

The CDA provides that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230 ( c) (1). The term "interactive computer service" is defined as "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server, including specifically a service or system that provides access to the Internet and such systems operated or services offered by libraries or educational institutions." § 230 ( f) (2). The term "information content provider" is defined as "any person or entity that is responsible, in whole or in part, for the creation or development of information provided through the Internet or any other interactive computer service." *Id.* Under this statutory scheme, Congress has immunized interactive computer services from any cause of action that would make them liable for publishing information provided by a third-party user of the service. *Carafano v. Metrosplash.com Inc.,* 339 F.3d 119, 1122 (9th Cir. 2003); *Zeran v. America Online, Inc.,* 129 F.3d 327, 330-31 (4th Cir. 1997), *cert. denied,* 524 U.S. 937 (1998).

The CDA, however, does not immunize an interactive computer service if it also functions as an information content provider for the portion of the statement or publication at issue. *Carafano,* 339 F.3d at 1123, 1125; *see also Blumenthal v. Drudge,* 992 F.Supp. 44, 50 (D.D.C. 1998)(acknowledging that § 230 (c)(1) would not immunize AOL with respect to any information developed or created entirely by itself and that joint liability would be possible if AOL "had any role in creating or developing any of the information" in the posted material); *Schneider,* 31 P.3d at 43 (implying that its determination that Amazon.com qualified for immunity would be different had Amazon.com contributed to the creation or development of the material). The CDA requires courts to determine, therefore, when content provided by third-parties is somehow transformed

into content created or developed by an interactive computer service. *Carafano v. Metrosplash.com, Inc.*, 207 F.Supp.2d 1055, 1067-68 (C.D.Cal.2002), *aff'd on other grounds*, 339 F.3d 1119 (9th Cir.2003) (rejecting the trial court's conclusion that Matchmaker.com was an information content provider). The distinction between merely publishing information provided by a third-party as an interactive computer service and actually creating or developing any of the information posted as an information content provider, is critical. *See Carafano*, 207 F.Supp.2d at 1067. That distinction determines whether the CDA provides immunity to a provider or user of an interactive computer service. *See* 47 U.S.C. § 230(c)(1). Claims against interactive computer services are barred only if they seek to hold the party liable for its exercise of a publisher's traditional editorial functions--such as deciding whether to publish, withdraw, postpone, or alter content. *Zeran*, 129 F.3d at 330.

This is exactly what Plaintiff attempts to do. Plaintiff is attempting to hold Amazon liable for the acts of non-parties who compiled and edited the Ophelia Editions edition of *Anjos Proibidos* and caused this edition of the photographic book to be sold on Amazon's website and its associate's websites. Plaintiff's allegations that Amazon published a photograph of her on the cover of a photographic book, of which it did not have Plaintiff's express consent to do so, are without foundation.

It is irrefutable that Defendant Amazon is an "interactive computer service." Its primary function is to allow multiple users to a computer service the ability to purchase various items, including but not limited to, books. It is irrefutable that Defendant did not choose the cover of the book to be displayed on its website and the associate websites and did not create or develop the content of these books, such that it can be considered an information content provider. There is

no credible argument that Amazon.com did so in this case. Under the CDA, therefore, so long as Messrs. Cabral and Stanley and Ophelia Editions, willingly provided the essential published content, *i.e.,* the Ophelia Editions edition, Amazon.com receives full immunity regardless of the specific process.

Even assuming *arguendo* that the CDA did not apply to Defendant's actions, §540.08 affords no remedy. Florida's statutory "right of publicity" is intended to assure an individual's right to own, protect, and commercially exploit his name and likeness. Florida courts have consistently refused to find liability under §540.08, unless the unauthorized use "directly promotes" the defendant's product or service. *See Loft v. Fuller*, 4078 So.2d 619, 623 (Fla. 4th DCA 1981).

Plaintiff's claims are parallel to those underlying *Gritzke v. M.R.A. Holding, LLC,* 2002 WL 32107540 (N.D. Fla. 2002), where a Florida college student alleged that she was videotaped exposing her breasts as part of a Mardi Gras crowd. *Id.* at *1. A picture of the student's indiscretions was then disseminated on a videotape package of a video entitled, "Girls Gone Wild." *See id.* In denying the defendant's motion to dismiss the student's complaint, the district court held that because the student "squarely alleged that defendant published her photograph in Florida for commercial and advertising purposes specifically on the package of defendant's videotape" without her permission, she stated a claim under Section 540.08. *Id.*

With that said, Plaintiff's case is demonstrably different in that Plaintiff, unlike the plaintiff in *Gritzke*, gave consent for the use of her image to sell the first edition of *Anjos Proibidos*. Pursuant to §540.08 (3)(b), the statute will not apply if:

> The use of such name, portrait, photograph, or other likeness in

> connection with the resale or other distribution of literary, musical, or artistic productions or other articles of merchandise or property where such person has consented to the use of his or her name, portrait, photograph, or likeness on or in connection with the initial sale or distribution thereof; or . . . .

FLA. STAT. ANN. 540.08 (3)(b); *See also e.g., Allison Vintage Sports Plaques*, 136 F.3d 1443, 1447 (11th Cir. 1998)(once the holder of an intellectual property right consents to the sale of particular copies of his work, he may not thereafter exercise the distribution right with respect to such copies). As such, the initial consent by Plaintiff's mother allowing Mr. Cabral to use Plaintiff's image for the purpose of the invitations, the poster and printed material for the exhibition, launch of the book, and the actual photographic book, *Anjos Probidos*, precludes Plaintiff from now asserting that the use of her image, is unauthorized. It is of no moment, that Mr. Cabral did not place Plaintiff's image on the cover of the first edition or did not use her image to promote the exhibit and launch of the book. The fact of the matter is that he had the Plaintiff's consent, through her legal guardian, to do so. Under Florida law, after the initial consent and sale of *Anjos Proibidos*, Mr. Cabral retained all of the rights to continue to use Plaintiff's image in connection with the sale of *Anjos Proibidos*. For the same reasons, Plaintiff's Count III, common law right to privacy, must also fail.

### B. Civil Theft

Under Florida Law, a cause of action for civil theft "derives from two statutory sources: the criminal section setting forth the elements of theft, and the civil section granting private parties a cause of action for a violation of the criminal section." *Ames v. Provident Life and Accident Ins. Co.*, 942 F. Supp. 551, 560 (S.D. Fla. 1994), *aff'd* 86 F.3d 1168 (11th Cir. 1996). To establish a claim for civil theft, Plaintiff Thais must show that Amazon knowingly obtained or used, or

endeavored to obtain or use, her image with the intent to, either temporarily or permanently deprive her of a right to her publicity, or appropriate the property to Amazon's own use or to the use of any person not entitled to use the property. FLA STAT. ANN. §812.014(1). Further, "it is necessary to show not only that the defendant obtained or endeavored to obtain the plaintiff's property, but that [it] did so with *felonious intent to commit theft.*" *Ames,* 942 F. Supp. at 560 (emphasis added). The burden of proof imposed on the Plaintiff in this regard is a clear and convincing standard. *Small Business Admin. v. Echvarria,* 864 F. Supp. 1254, 1264 (S.D. Fla. 1994). Based upon the undisputed material facts set out above, the Court finds insufficient clear and convincing evidence to prove the necessary felonious intent on the part of Amazon.

## *CONCLUSION*

**ORDERED AND ADJUGED** that Defendant Amazon.com, Inc.'s Motion for Summary Judgment is **GRANTED**. This case is **CLOSED**. All pending motions are **DENIED AS MOOT**.

**DONE AND ORDERED** in chambers in Miami, Florida, this 30 day of July, 2004

*/s/ Marcia G. Cooke*
**MARCIA G. COOKE**
**UNITED STATES DISTRICT JUDGE**

cc:

The Honorable Magistrate Judge Chris M. McAliley
Hendrik G. Milne, Esq., *Counsel for Plaintiff*
Beth-Ann Krimsky, Esq., *Counsel for Defendant*
Vanessa S. Power, Esq., *Counsel for Defendant*